[No. B179798. Second Dist., Div. Eight. Apr. 26, 2006.]

STEVENSON REAL ESTATE SERVICES, INC., Plaintiff and Appellant, v. CB RICHARD ELLIS REAL ESTATE SERVICES, INC., et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Jerry K. Staub and Jerry K. Staub for Plaintiff and Appellant.

John T. Thornton, Ellis D. Reiter, Jr., Wallace L. Rosvall, and Robert W. Peyton for Defendants and Respondents.

**OPINION**

**BOLAND, J.—**

## SUMMARY

Appellant Stevenson Real Estate Services, Inc. (Stevenson), appeals from a judgment entered after the trial court granted respondents' motion for judgment on the pleadings without leave to amend. We conclude the first amended complaint failed to state a claim, and therefore the trial court properly granted the motion for judgment on the pleadings. However, appellant should be granted leave to amend his complaint to attempt to plead a claim based upon respondents' alleged violation of the rules of an association of realtors.

## BACKGROUND AND PROCEDURAL HISTORY

The operative pleading, Stevenson's first amended complaint, alleged Stevenson and nonparty David Maron are licensed real estate brokers. Maron is a principal in Stevenson. It further alleged that sometime around 2001, Vision Entertainment (Vision) asked Stevenson and Maron to represent it in finding suitable property to lease in order to consolidate its three offices in a single location. Stevenson and Maron "expended hundreds of hours of time in providing Vision with information regarding spaces available to lease and conducting analysis of such spaces and . . . of costs involved in moving into and leasing such spaces . . . ." Prior to or during March 2002, Maron showed Vision the property at 29125 Avenue Paine in Valencia (property) and provided Vision with substantial information, photographs and analysis regarding the property. Vision told Maron it was interested in making an offer to lease the property, but would have to seek the consent of Deluxe Media Services, Inc. (Deluxe), which was acquiring Vision.

The first amended complaint further alleges that in April or May 2002, Maron met with Deluxe authorized representative Dan McLellan, who consented to Maron and Stevenson commencing negotiations for the lease of the property by Vision and/or Deluxe. Before a lease could be negotiated, however, representatives of Vision and/or Deluxe informed Maron that Deluxe's parent corporation, The Rank Group PLC and/or The Rank Group, Inc., "had interceded and demanded that any negotiations on behalf of Vision and/or Deluxe be conducted by" Insignia Financial Group, Inc. (Insignia). In August 2002, Stevenson advised Insignia by letter that Stevenson had shown the property to Vision and/or Deluxe and procured their interest in the property. Stevenson objected to "Insignia's insertion into the relationship between Stevenson and Vision and/or Deluxe" and informed Insignia that its conduct violated the Rules of Professional Conduct (Rules) of the American

Industrial Real Estate Association (Association), which applied to the property because it was listed for lease with Association member CB Richard Ellis.

The first amended complaint further alleges that in March or April 2003, Deluxe entered into a written lease for the property for an initial term of 66 months. It alleges Insignia received a brokerage commission on the lease, even though Stevenson was the procuring cause of the lease and should have received a 3 percent commission under the terms of the listing agreement between CB Richard Ellis and the owner, Hewson Real Estate Developments.

The first amended complaint pled a single cause of action for intentional interference with prospective economic advantage. It named as defendants The Rank Group PLC; The Rank Group, Inc.; Deluxe; Insignia; and CB Richard Ellis, Inc., as successor in interest to Insignia, which the complaint alleged merged with CB Richard Ellis, Inc., in July 2003. Apparently, demurrers by Deluxe and the two Rank defendants to the first amended complaint were sustained with leave to amend, but Stevenson failed to amend.[1]

CB Richard Ellis, Inc., and CB Richard Ellis Real Estate Services, Inc. (respondents), answered the first amended complaint. Their answer stated that CB Richard Ellis Real Estate Services, Inc., was incorrectly sued as Insignia Financial Group, Inc.

Shortly before trial, respondents filed a motion for judgment on the pleadings. The trial court granted the motion and denied leave to amend. Following entry of judgment in favor of respondents, appellant timely filed this appeal.

## DISCUSSION

Appellant contends the trial court erred by granting respondents' motion for judgment on the pleadings.

■ A motion for judgment on the pleadings is properly granted when the "complaint does not state facts sufficient to constitute a cause of action against that defendant." (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. (Code Civ. Proc., § 438, subd. (d).) The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions,

---

[1] Neither these motions nor rulings thereon are part of the appellate record.

speculation, or allegations contrary to law or facts that are judicially noticed. (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254 [2 Cal.Rptr.3d 739].)

We independently review the trial court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) In doing so, we accept as true the plaintiff's factual allegations and construe them liberally. (*Id.* at pp. 515–516.) If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216 [70 Cal.Rptr.2d 745].)

In order to plead a claim for interference with prospective economic advantage, a plaintiff must allege an economic relationship between it and a third party that carries a probability of future economic benefit to the plaintiff, defendant's knowledge of the relationship, intentional acts by the defendant designed to disrupt the relationship, actual disruption of the relationship, and economic harm to the plaintiff proximately caused by the defendant's acts. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154, 1164–1165 [131 Cal.Rptr.2d 29, 63 P.3d 937] (*Korea Supply*).) In addition, the plaintiff must allege that the defendant's conduct was "wrongful 'by some measure beyond the fact of the interference itself.' " (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392–393 [45 Cal.Rptr.2d 436, 902 P.2d 740], fn. & citation omitted (*Della Penna*).) In this context, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Korea Supply, supra,* 29 Cal.4th at p. 1159, fn. omitted.) The conduct must be "independently actionable." The "act of interference with prospective economic advantage is not tortious in and of itself," but requires "pleading that a defendant has engaged in an act that was independently wrongful" in order to distinguish "lawful competitive behavior from tortious interference." (*Ibid.*)

Respondents' motion for judgment on the pleadings only challenged the sufficiency of the wrongful conduct allegation in the first amended complaint. The first amended complaint alleged that Insignia's interference was wrongful because it violated the Rules of the Association, which applied to the property listing because the listing agent, CB Richard Ellis, was an Association member and placed the listing on the Association's multiple listing service. The first amended complaint specifically alleged that the Association's Rules prohibited "an associate" from inserting himself or herself "into a transaction or potential transaction initiated by another Associate" and using "tactics calculated to interfere with the First Associate's relationship with the client." It

alleged that, although Insignia was not a member of the Association, it subjected itself to the Rules "by virtue of conducting negotiations on behalf of a client on an [Association] listing."

The first amended complaint further alleged Insignia's interference was wrongful because it violated Business and Professions Code section 17200 "and constituted an unfair business practice in that such practice is unfair, unethical, oppressive, and unscrupulous when balanced against the injury caused Stevenson versus the justification for such conduct by Defendants." It also alleges Insignia conspired with the others to violate the Association's Rules, and this conspiracy constituted an unfair business practice under Business and Professions Code section 17200.

Respondents' motion for judgment on the pleadings argued, inter alia, that the first amended complaint did not adequately plead wrongful conduct because Insignia was not bound by the Association's Rules. To support this proposition, the motion relied upon definitions and other provisions of the Rules not pled in the first amended complaint. The trial court relied upon these unpled portions of the Rules as well, noting that Stevenson did not "object[] to the quotation as being improperly conveyed" and finding the Rules inapplicable to respondents. This was error. The trial court was required to rule upon the motion solely upon the basis of matters pled in the first amended complaint and matters judicially noticed. Respondents did not request judicial notice of the Rules, and apparently did not comply with the requirements of California Rules of Court, rule 323(c). Neither the notice of motion nor the points and authorities indicated that respondents sought judicial notice of the Rules, as required by Code of Civil Procedure section 438, subdivision (d). The trial court did not take judicial notice of the Rules. Stevenson's failure to object to the accuracy of the quotation was irrelevant. Since judicial notice was neither requested nor taken, Stevenson's failure to object to judicial notice of the Rules also was irrelevant. On appeal, respondents did not comply with California Rules of Court, rule 22(a). Accordingly, if respondents' reference to judicial notice in their appellate brief was intended as a request, it is denied as procedurally improper. Because the portions of the Rules upon which respondents rely were neither pled nor subject to judicial notice, respondents' contention that Insignia was not subject to the Rules has no merit. For purposes of determining the proper ruling upon the motion for judgment on the pleadings, we must accept the allegation of the first amended complaint that Insignia was subject to the Rules.

Respondents' motion for judgment on the pleadings further argued that a violation of the Association's Rules would not suffice to constitute wrongful conduct. In the motion and on appeal, respondents rely upon *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th

1249 [116 Cal.Rptr.2d 358] (*Gemini*), in which the plaintiff sought to establish the wrongfulness of the defendant's conduct by opinion testimony to the effect that the defendant's conduct was unethical, not customary in the pertinent industry, and "really bad business." (*Id.* at pp. 1257–1258.) The Court of Appeal rejected "the nebulous 'industry standards' test advanced by Gemini," on the grounds that "[t]he imposition of liability for interference based merely on opinions that the solicitation of a competitor's business was 'unethical' or violated 'industry standards' would create uncertainty and would chill, not maximize, competition." (*Id.* at p. 1259.)

Unlike the opinion testimony relied upon by the plaintiff in *Gemini*, the Association's Rules are written and presumably made available to all Association members. The Rules therefore cannot be deemed nebulous. Any Association member and anyone with access to the Rules could easily refer to the written rules to discover what the Rules permitted, required and prohibited. The Rules therefore do not implicate the concerns regarding uncertainty and chilling competition expressed by the court in *Gemini*.

Because we must accept Stevenson's allegation that Insignia was subject to the Association's Rules, the crucial issue becomes whether a trade association's written rules are sufficient to constitute a "determinable legal standard," as required by *Korea Supply, supra,* 29 Cal.4th at page 1159. No California case has addressed this issue. Several states that require or permit[2] a showing of wrongful conduct for intentional interference with prospective economic advantage permit a cause of action based upon a violation of established industry, trade or professional rules or standards. (See, e.g., *Top Serv. Body Shop, Inc., supra,* 582 P.2d at p. 1371; *Newton Ins. Agency v. Caledonian Ins.* (2002) 114 Wn.App. 151 [52 P.3d 30, 34]; *Anderson Development Co. v. Tobias* (2005) 2005 UT 36 [116 P.3d 323, 331]; *Yoakum v. Hartford Fire Ins. Co.* (1996) 129 Idaho 171 [923 P.2d 416, 423]; *Hunter v. Board of Trustees* (Iowa 1992) 481 N.W.2d 510, 518; *Duggin v. Adams* (1987) 234 Va. 221 [360 S.E.2d 832, 837].) The Restatement Second of Torts, section 767, comment c, page 32 also supports treatment of a violation of established industry, trade or professional rules or standards as independently wrongful conduct supporting a cause of action: "Violation of recognized ethical codes for a particular area of business activity or of established customs or practices regarding disapproved actions or methods may also be significant in evaluating the nature of the actor's conduct as a factor in determining whether his interference with the plaintiff's contractual relations was improper or not."

---

[2] Several states permit an intentional interference with prospective economic advantage claim to be based upon conduct that is wrongful because the defendant either had an improper motive or employed improper means. (See, e.g., *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.* (1978) 283 Ore. 201 [582 P.2d 1365, 1371] (*Top Serv. Body Shop, Inc.*).)

Reliance upon industry, trade or professional rules or standards is not without criticism. Judge Richard Posner has warned, "the established standards of a trade or profession in regard to competition, and its ideas of unethical competitive conduct, are likely to reflect a desire to limit competition for reasons related to the self-interest of the trade or profession rather than to the welfare of its customers or clients." (*Speakers of Sport, Inc. v. Proserv, Inc.* (7th Cir. 1999) 178 F.3d 862, 867.) Because the California Supreme Court was concerned with "draw[ing] lines of legal liability in a way that maximizes areas of competition free of legal penalties" when it revised the law regarding interference with prospective economic advantage, Judge Posner's concern cannot be dismissed. (*Della Penna, supra,* 11 Cal.4th at p. 392.)

Nonetheless, we conclude that, in certain circumstances, a violation of well-defined, established rules or standards of a trade, association or profession may constitute the type of wrongful conduct that will support a cause of action for intentional interference with prospective economic advantage. The conclusion is based primarily upon the language used in *Korea Supply.* The California Supreme Court held an act was "independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Korea Supply, supra,* 29 Cal.4th at p. 1159, fn. omitted.) The specified sources—constitution, statute, regulation and common law—account for virtually all sources of legal restrictions imposed upon a party's conduct. "Other determinable legal standard" necessarily refers to some other source of limitations upon behavior by which conduct could be assessed. Given the prevailing rule in other states, especially Oregon, and the California Supreme Court's reliance upon the Oregon Supreme Court's ruling in *Top Serv. Body Shop, Inc., supra,* 582 P.2d 1365, in introducing the requirement of wrongful conduct (*Della Penna, supra,* 11 Cal.4th at p. 393), in an action between competitors, who are bound by well-defined, established rules or standards of a trade, association or profession, those rules may constitute "a determinable legal standard" within the scope of *Korea Supply.* If particular rules or standards unduly restrict free competition, it may be inappropriate to permit a plaintiff to base an interference with prospective economic advantage upon them.

*Korea Supply* also required, however, that the defendant's conduct amount to "independently actionable conduct." (*Korea Supply, supra,* 29 Cal.4th at p. 1159.) This necessarily requires that the rules or standards provide for, or give rise to, a sanction or means of enforcement for a violation of the particular rule or standard that allegedly makes the defendant's conduct wrongful. Seldom are the rules or standards of associations, trades and professions likely to give rise to legal causes of action. However, internal

remedies available within the association, such as a right of arbitration between the aggrieved members, should suffice to establish "independently actionable conduct."

In this case, the first amended complaint alleges a violation of Association Rules, but does not allege the violation is independently actionable, either under the Rules or otherwise. Accordingly, we cannot conclude that the first amended complaint's allegation of respondents' violation of the Rules complied with the *Korea Supply* requirement of pleading unlawful conduct. However, counsel discussed arbitration under the Rules during the hearing on the motion for judgment on the pleadings. Although Stevenson adamantly argues before this court that it does not seek to amend, fairness requires that it receive an opportunity to amend its pleading to allege, if it can truthfully do so, that respondents' violation of the Rules is independently actionable because the Rules provided for arbitration or another adequate remedy.

For guidance of the parties, the remaining contentions regarding the alternative basis of Stevenson's cause of action are addressed.

Respondents' motion for judgment on the pleadings argued that the Business and Professions Code section 17200 allegation was insufficient to meet the requirement of wrongful conduct because it did not allege any conduct independent of the interference. It appears respondents and the trial court misunderstood the nature of the independently wrongful conduct element.[3] A plaintiff need not allege the interference and a second act independent of the interference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful for reasons other than that it interfered with a prospective economic advantage. (*Della Penna, supra,* 11 Cal.4th at pp. 379, 393; *Korea Supply, supra,* 29 Cal.4th at pp. 1158–1159, 1162.)

■ Nonetheless, Stevenson's allegation that respondents' conduct was unlawful because it was an unfair business practice and therefore violated

---

[3] In its tentative ruling, later adopted as its actual ruling, the trial court referred to Stevenson's failure to allege "any wrongful conduct <u>other than</u> the interference itself." It further noted that "the gravamen of each alleged violation is the same alleged interference and no other, separate, and wrongful act is alleged." The court also noted that the alleged statutory violation "was the same interference, not a separate wrongful act, and therefore Plaintiff has not adequately pleaded this element of a separate wrongful act." Finally, the court noted that "the only violation is still the same interference and not a separate wrongful act as is required for this cause of action."

Respondents argued in their motion for judgment on the pleadings that Stevenson was required to "allege that Defendants engaged in conduct that was (1) wrongful and (2) independent of the interference itself." They argued the first amended complaint was inadequate because "plaintiff does not allege that Defendants engaged in any wrongful conduct constituting unfair competition, other than the purported interference itself." On appeal, respondents essentially reiterate these arguments.

Business and Professions Code section 17200 is insufficient to support its intentional interference with prospective economic advantage claim. The first amended complaint clearly alleges that Stevenson and Insignia were both licensed real estate brokers. The alleged conduct establishes, for purposes of ruling upon the motion for judgment on the pleadings, that both acted as brokers with respect to commercial real estate. They were therefore direct competitors. "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187 [83 Cal.Rptr.2d 548, 973 P.2d 527], fn. omitted.) The first amended complaint alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws. Indeed, the gist of Stevenson's claim is competitive, not anticompetitive, conduct by Insignia. "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." (*Id.* at p. 186.) Accordingly, the first amended complaint does not adequately allege that Insignia violated section 17200.[4] The pleading is similarly insufficient on this theory as against CB Richard Ellis, which was sued only as successor in interest to Insignia.

■ Because the allegations of Insignia's violation of the Association's Rules and Business and Professions Code section 17200 are inadequate, the first amended complaint fails to plead wrongful conduct in support of the interference with prospective economic advantage cause of action. The trial court therefore properly granted respondents' motion for judgment on the pleadings.

## DISPOSITION

The judgment is vacated. The ruling on the motion for judgment on the pleadings is affirmed; however, the trial court is directed to grant Stevenson

---

[4] Respondents' motion for judgment on the pleadings further argued that the Business and Professions Code section 17200 allegation was insufficient because it did not allege ongoing conduct or that members of the public are likely to be deceived by respondents' acts. However, deception of members of the public is only required for claims of a fraudulent business act or practice. (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 618 [55 Cal.Rptr.2d 818]; *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438].) Ongoing conduct has not been required since Business and Professions Code section 17200 was amended in 1992. (*United Farm Workers of America v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1163 [100 Cal.Rptr.2d 251].)

leave to amend. If it declines to amend within the time allotted by the trial court, the judgment is to be reinstated. Each party is to bear its own costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.