Filed 6/12/13  Veta v. HDN Group CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **VETA,** | |
| **Plaintiff, Cross-Defendant and Appellant,** | |
| v. | |
| **HDN GROUP,** | **A134197** |
| **Defendant, Cross-complainant and Respondent;** | |
| | **(Sonoma County Super. Ct. No. SCV245394)** |
| **MARC HARRIS et al.,** | |
| **Defendants and Respondents;** | |
| **SENATOR O'BRIEN et al.,** | |
| **Cross-Defendants and Appellants.** | |

Veta, a partnership, appeals from the trial court's judgment in favor of HDN Group (HDN), also a partnership, on Veta's first amended complaint against HDN and on HDN's first amended cross-complaint against Veta.[1]  We conclude the trial court erred in concluding Veta's first amended complaint failed to state claims for fraud and breach of

---

[1]  In this opinion, we use the name "Veta" to refer to both Veta alone as well as Veta and its three individual partners, Senator O'Brien, Nicole O'Brien, and Juan Jaime Dillon Macias.  Similarly, we use the name "HDN" to refer to both HDN alone as well as HDN and its two individual partners, Marc Harris and William DiNapoli.

1

the implied covenant of good faith and fair dealing, in striking allegations from Veta's first amended complaint under the statute of frauds and parol evidence rule, in failing to grant Veta leave to amend, and in restricting trial on HDN's cross-complaint to the issue of damages owed to it. On the other hand, the trial court properly concluded Veta failed to state a claim for breach of contract.

## BACKGROUND[2]

In January 2009, Veta entered into negotiations with HDN to lease commercial property (Property) located on Healdsburg Plaza. Veta intended to operate a dinner club and music venue at the Property. The Property required significant improvements in order for it to be used for Veta's intended purpose.

On March 23, 2009, Veta and HDN executed a 10-year lease (Lease) for the Property, with a start date of June 1, 2009. The Lease required HDN to install a sprinkler system and elevator on the Property. The Lease contemplated that the sprinkler system would be completed by July 1 and the elevator would be completed by August 1.

Following execution of the Lease, HDN failed to commence construction of the improvements to the Property, but assured Veta the improvements would be completed on schedule. HDN also requested additional money from Veta to fund completion of the improvements required under the Lease, at one point requesting $70,000. Subsequently, Veta learned, contrary to HDN's previous representation, HDN had not applied for an improvement loan from the City of Healdsburg.

As of June 1, 2009, HDN had not started construction of the promised improvements. On that date, HDN informed Veta the sprinkler system would not be completed until October 1.

---

[2]  As explained below (see, *post*, part II.), in striking Veta's causes of action for failure to state a claim, the trial court effectively treated HDN's motion to strike as a motion for judgment on the pleadings. On appeal from such a ruling, "we accept as true the plaintiff's factual allegations and construe them liberally." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1220.) Our factual summary reflects that standard of review. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1056, fn. 1.)

Later in June 2009, HDN served Veta with a three-day notice to pay rent or quit.[3] On July 1, 2009, Veta, acting in pro per, filed suit against HDN, alleging one cause of action for fraud. On September 4, 2009, HDN filed a separate action for unlawful detainer against Veta. The parties stipulated to an order granting possession to HDN and all remaining issues were reserved for determination in Veta's action.

In February 2009, HDN filed a cross-complaint against Veta and its individual partners for breach of contract.

In December 2009, HDN demurred to Veta's complaint, primarily for lack of specificity. Veta did not oppose. The trial court sustained with leave to amend.

In January 2010, Veta filed its first amended complaint (FAC).[4] The FAC alleged three causes of action for fraud (fraud and deceit, negligent misrepresentation, and false promise), and causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The FAC named HDN and its individual partners.

HDN moved to strike the FAC on various grounds. The trial court granted the motion and subsequently granted HDN's motion for a judgment of dismissal of the FAC.

Arguing the order in the unlawful detainer action was a determination Veta breached the Lease, HDN requested the trial on its cross-complaint be limited to the issue of the damages owed to it. The trial court entered an order to that effect and the parties eventually stipulated to the amount of damages owed to HDN. In October 2011, the trial court entered a judgment in favor of HDN on the FAC and awarded HDN $150,000 on its cross-complaint against Veta. This appeal followed.

DISCUSSION

I. *The Sham Pleading Doctrine Is Inapplicable*

In the trial court's order on HDN's motion to strike the FAC, the court found the FAC was a sham pleading because the FAC included allegations different from the

---

[3]  HDN asserts it "effectively" served Veta with the three-day notice on or around August 27, 2009. The date of service is not important for the purposes of this appeal.

[4]  Veta's individual partners were not named as plaintiffs.

allegations in the original complaint.  Veta's counsel submitted a declaration averring the allegations in the FAC were based on counsel's independent factual investigation and an attempt to provide more detail than the original complaint, and any apparent inconsistencies were either not actual inconsistencies or not material differences.  The trial court concluded the declaration was inadmissible and that it "fail[ed] to explain the discrepancies and omissions between the original and first amended complaint."

"Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment.  [Citations.]  A noted commentator has explained, 'Allegations in the original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation in the amended pleading.  The policy against sham pleadings requires the pleader to *explain* satisfactorily any such omission.'  [Citation.]"  (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425-426, fn. omitted.)  We conclude the trial court abused its discretion (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 951 (*Berman*)) in striking the FAC as a sham pleading.

Although there is no absolute rule against applying the sham pleading doctrine where the original pleading is unverified, the circumstances must justify applying the doctrine in that situation.  Thus, the general rule is, " 'Where a *verified* complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' [Citations.]  'In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.'  [Citation.]"  (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 836 (*Reichert*), italics added; see also *Tostevin v. Douglas* (1958) 160 Cal.App.2d 321, 327 ["It is well settled that facts once alleged under oath cannot be withdrawn from consideration by merely filing an amended pleading eliminating them without explanation."].)  *Reichert* held the doctrine could justify holding a plaintiff to an allegation in an unverified complaint where the prior "allegation appears as well established as if the original complaint had been verified."  (*Reichert*, at p. 837.)

In *Reichert*, the plaintiff alleged in his original complaint that he was previously adjudicated bankrupt, but plaintiff omitted that allegation in the first four causes of action in his first and second amended complaints. (*Reichert*, *supra*, 68 Cal.2d at pp. 835-836.) The Supreme Court held the trial court could sustain a demurrer to those four causes of action based on the omitted bankruptcy allegation, which meant that the causes of action were actually vested in plaintiff's trustee in bankruptcy. (*Id.* at pp. 829, 837.) That was proper, despite the omission of the allegation in those causes of action and despite the fact that the original complaint was unverified, because the remaining causes of action in the amended complaint *did* contain the allegation of bankruptcy and because the plaintiff told the trial court "the second amended complaint was as well pleaded as he could make it." (*Id.* at p. 837.) On that record, *Reichert* concluded, "for our present purposes the bankruptcy allegation appears as well established as if the original complaint had been verified. In view of the foregoing, we are satisfied that in examining the four common counts, we can consider plaintiff's prior allegation that he was adjudicated a bankrupt on the date given." (*Ibid.*)

In *Hendy v. Losse* (1991) 54 Cal.3d 723, 743, the Supreme Court concluded the trial court did not err in denying the plaintiff leave to amend to omit an allegation that a defendant was an employee, and to allege the defendant was an independent contractor, even though the original allegation was not verified. The court reasoned, "While plaintiff's allegation that [the defendant] was an employee was made on information and belief, he did not suggest to the trial court that a factual basis existed for amendment of the complaint to allege that [the defendant] was an independent contractor, and he has not demonstrated to this court either that the allegation that [the defendant] was an employee was the result of inadvertence or mistake, or that he has since discovered a factual basis for alleging that [the defendant] was an independent contractor. [Citation.]"

In the present case and unlike in *Reichert*, no circumstances justify a conclusion the allegations in the original, unverified complaint should be given conclusive effect. And the declaration of Veta's counsel, which avers that the allegations in the FAC are the product of his independent investigation, demonstrates a factual basis exists for the

5

allegations in the FAC. The trial court abused its discretion in striking the FAC as a sham pleading.**5**

## II. *The Trial Court Erred in Striking Allegations in the FAC Under the Statute of Frauds and Parol Evidence Rule*

The trial court concluded the FAC's "allegations concerning [HDN's] alleged oral promises to perform certain material terms which fall outside the four corners of the lease violate the [s]tatute of [f]rauds and must be stricken." "The statute of frauds 'demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not.' [Citation.]" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345 (*Casa Herrera*); see also Civ. Code, § 1624.) However, the trial court's reasoning was in error, because the statute of frauds does not bar a cause of action based on a fraudulent promise. Under *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 (*Tenzer*), "[t]he doctrine of estoppel to plead the statute of frauds may be applied where necessary to prevent either unconscionable injury or unjust enrichment." (*Id.* at p. 27; see also *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 (*Riverisland*).)

HDN argues that, even if Veta's claims based on the alleged oral promises are not barred by the statute of frauds, those claims are barred under the parol evidence rule. Under that rule, "all prior or contemporaneous 'oral negotiations are merged in the written contract, which is conclusive in the absence of a plea of actual fraud or mistake.' [Citation.] The written agreement supersedes these negotiations and becomes the parties' sole agreement [citation], and extrinsic evidence may not 'add to, detract from, or vary the terms of' that agreement [citation]. As such, the rule 'applies to any type of contract, and its purpose is to make sure that the parties' final understanding, deliberately

---

**5** Because we conclude the trial court erred, in the circumstances of this case, in striking the FAC under the sham pleading doctrine where the original complaint was unverified, we need not decide whether the court also erred by failing to accept the explanation offered in Veta's counsel's declaration or whether the court erred in striking the FAC altogether based on the changed allegations.

expressed in writing, shall not be changed.' [Citation.]" (*Casa Herrera*, *supra*, 32 Cal.4th at p. 345; see also Civ. Code, § 1625.)

Until recently, the parol evidence rule precluded "promissory fraud claims premised on prior or contemporaneous statements at variance with the terms of a written integrated agreement." (*Casa Herrera*, *supra*, 32 Cal.4th at p. 346, citing *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258.) But in *Riverisland*, the California Supreme Court overruled *Pendergrass* and its progeny, concluding that the limitation on the fraud exception to the parol evidence rule was "plainly out of step with established California law" (*Riverisland supra*, 55 Cal.4th at p. 1181), and also "inconsistent with the terms of" section 1856 of the Code of Civil Procedure (*Riverisland*, at p. 1182). In overruling *Pendergrass*, the court "reaffirm[ed] the venerable maxim [that] '[i]t was never intended that the parol evidence rule be used as a shield to prevent the proof of fraud.' " (*Riverisland*, at p. 1182.)

Thus, under *Tenzer* and *Riverisland*, the trial court erred in concluding that Veta could not rely on alleged oral promises to perform in support of the fraud causes of action in the FAC, where it is further alleged that HDN never intended to perform such promises.

III. *The Trial Court Erred in Striking* All *of the Causes of Action in the FAC for Failure to State a Claim*

One of the trial court's primary grounds for granting the motion to strike was its conclusion that the causes of action in the FAC were without merit. This was not a proper basis to grant a motion to strike. As explained in *Pierson v. Sharp Memorial Hospital, Inc.* (1989) 216 Cal.App.3d 340, 342, "a motion to strike is generally used to reach defects in a pleading which are not subject to demurrer. A motion to strike does not lie to attack a complaint for insufficiency of allegations to justify relief; that is a ground for general demurrer. [Citation.]" Nevertheless, "[a] motion for judgment on pleadings is made on the same grounds and decided on the same basis as a general demurrer," and, to the extent the trial court found the allegations in the FAC insufficient, we treat the court's order as one granting judgment on the pleadings. (*Ibid.*)

7

We independently review the trial court's ruling to determine whether the FAC states a cause of action. (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.*, *supra*, 138 Cal.App.4th at p. 1220.) "In doing so, we accept as true the plaintiff's factual allegations and construe them liberally. [Citation.] If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale. [Citation.]" (*Ibid.*)

A. *Fraud Claims*

The trial court concluded the fraud allegations in the FAC were inadequate because Veta could not demonstrate HDN's intent not to perform by alleging only its nonperformance. (*Tenzer, supra,* 39 Cal.3d at p. 30.) But the FAC contained various other allegations supporting the inference of fraudulent inducement, including that HDN lied about having been approved for an improvement loan when HDN had never applied for the loan; that HDN lied about having sufficient capital to pay for the improvements and about having retained subcontractors; and that HDN demanded additional funds from Veta to pay for the promised improvements. Those allegations were sufficient. (*Tenzer*, at p. 30.)

The trial court also concluded Veta could not show HDN induced it to enter the Lease without intending to perform because the Lease contained a provision the court called an "escape hatch" that protected Veta's interests in the event of HDN's nonperformance. Specifically, the trial court relied on language in the Lease providing for cancellation of the Lease and refund of Veta's security deposit " '[i]n the event that [HDN] is unable to obtain necessary permits for the installation of sprinklers and elevator . . . .' " The trial court believed the provision "removed all economic incentive and advantage" to HDN of entering the Lease without an intention to perform. However, we disagree the provision clearly applies on the facts alleged in the FAC. The FAC does not allege HDN was unable to obtain the necessary permits; under the facts alleged, it is unclear whether HDN even attempted to obtain permits.

8

Nevertheless, the Lease did offer some protection to Veta, because separate language provided Veta was entitled to a credit for rent for any period during which HDN was delinquent in completing the promised improvements. (See, *post*, part III.B.) That provision, however, does not defeat Veta's fraud claims as a matter of law. Under the allegations in the FAC, the provision did not mean there would be no advantage to HDN in inducing Veta to enter the Lease without an intent to complete the improvements. The FAC alleges that, after execution of the Lease, HDN asked Veta to contribute financially toward the improvements; HDN may have believed it would be able to extract such contributions once Veta had committed to the Lease and invested in developing its business at that location. Moreover, the FAC alleges that, after execution of the Lease, HDN was "able to obtain copies of all the architectural renderings and schematics prepared by [Veta], which" HDN is "now using to [its] sole benefit." The Lease also failed to provide Veta a right to cancel the Lease and obtain a refund of its security deposit in the event of delays not due to permitting problems. Thus, the so-called "escape hatch" did not remove *all* advantage of the Lease to HDN as a matter of law.

The trial court also appeared to conclude Veta's fraud allegations were inadequate because Veta filed suit on July 1, 2009, which was the same day that HDN was due to have completed installation of a sprinkler system and before the August 1, 2009 due date for installation of an elevator. From that timing, the court reasoned that Veta "cannot allege nonperformance on the face of the pleadings." However, as we point out above, the fraud claims were not based on nonperformance alone and, in any event, the FAC alleged various facts supporting the allegation of nonperformance. At the most basic level, the FAC alleged HDN never started work on the improvements; if work had not even been commenced on the sprinkler system by the July 1 deadline, Veta could allege in a lawsuit filed that same day that the deadline was missed. Moreover, the FAC alleged that HDN told Veta on June 1 that the sprinkler system would not be completed until October 2009. Thus, the trial court erred in concluding that the allegations in the FAC were inadequate to show nonperformance, as relevant to the fraud claims.

9

Finally, the trial court's reasoning that various provisions in the Lease undermine the fraud causes of action fails in light of the alleged oral promises, which may support the fraud claims under *Riverisland*, *supra*, 55 Cal.4th 1169. The Lease provisions relied upon by the trial court do not address those alleged promises.

B. *Breach of Contract Claim*

The trial court concluded Veta failed to state a claim for breach of contract because it filed suit before passage of the July 1, 2009 deadline for construction of the sprinkler system and because Veta could not state a breach of contract claim based on anticipatory repudiation. We agree the FAC fails to state a claim for breach of contract, but not for the reasons given by the trial court. Instead, we conclude the claim fails because the Lease as written contains no enforceable promise of completion of the improvements by any particular date. Paragraph 5.4 of the Lease states in part: "Lessor shall install, at Lessor's cost and expense, an elevator that shall provide access to Lessee's premises subject to all necessary approvals . . . . Lessor shall install, at Lessor's cost and expense, a sprinkler system for the entire building . . . . In the event that the Lessor is unable to complete installation of sprinklers on or before July 1, 2009, and elevator on or before August 1, 2009 and all of Lessee's tenant improvements are completed by Lessee at that time, then Lessee shall be given a pro rated credit for rent until Lessor's installation is complete." Thus, under the plain language of the contract, failure to complete the improvements on schedule was not a breach; it simply provided an entitlement to a rent credit until completion of the improvements.

C. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

On the other hand, the trial court erred in concluding Veta failed to state a claim for breach of the implied covenant of good faith and fair dealing. "Generally, every contract, including commercial leases, ' " 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' [Citation.]" ' [Citations.]" (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 798.) "[T]he implied covenant is a supplement to an existing contract." (*Id.* at p. 799.) In the present case, the FAC alleges HDN was aware Veta urgently needed the improvements to be completed on

10

schedule, and HDN repeatedly misled Veta into believing the improvements would be completed, causing it to expend substantial resources in preparing for a planned September 2009 opening. Thus, the FAC states a claim for breach of the implied covenant of fair dealing, even though it was not a breach for HDN to fail to meet the improvement schedule in the Lease.

IV. *The Trial Court Should Have Granted Veta Leave to Amend*

In the trial court's order granting the motion to strike, the trial court concluded the FAC went beyond the proper scope of amendment following the sustaining of the demurrers to the original complaint. In particular, the FAC included three fraud causes of action instead of the one in the original complaint, added causes of action for breach of contract and breach of the implied covenant of good faith, and added Harris and DiNapoli as defendants. We need not decide whether the court properly granted the motion to strike on that ground because, in any event, the court abused its discretion in failing to grant Veta leave to amend.

In opposing HDN's motion for judgment of dismissal following grant of the motion to strike, Veta argued the court should have granted leave to amend in granting the motion to strike and requested that the court grant it such leave instead of entering a judgment of dismissal. " ' "When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict 'is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling.' " [Citation.] If the original pleading has not framed the issues in an articulate and precise manner, a plaintiff should not be precluded from having a trial on the merits.' [Citation.]" (*Berman*, *supra*, 56 Cal.App.4th at p. 945.) Thus, " 'it is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment. [Citation.] . . . Moreover, it is irrelevant that new legal theories are introduced as long as the proposed amendments "relate to the same general set of facts." ' [Citation.]" (*Ibid.*) Under

11

California's "liberal rules of pleading, 'the right of a party to amend to correct inadvertent misstatements of facts or erroneous allegations of terms cannot be denied.' [Citation.]" (*Ibid.*)

Although the amendments in the FAC arguably went beyond the scope of that normally permissible in response to the sustaining of a demurrer (see *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015), the new legal theories are clearly based on the same set of general facts as the fraud cause of action in the original complaint (see *Berman*, *supra*, 56 Cal.App.4th at p. 946). Indeed, the trial court's order granting the motion to dismiss states regarding the three fraud causes of action, "[t]he two new claims duplicate the allegations under the original claim; and all three causes of action are, in fact, species of the same tort of fraud." Moreover, Harris and DiNapoli were effectively already in the action as the partners in HDN. (See *Rudnick v. Delfino* (1956) 140 Cal.App.2d 260, 266-267.) HDN does not argue on appeal it would have been misled or prejudiced had the trial court allowed Veta to amend the FAC, and the trial court did not make any such finding.

Because, as explained above, the trial court erred in concluding the FAC failed to state claims for fraud and breach of the implied covenant of good faith and fair dealing, the court abused its discretion in failing to permit Veta to file a second amended complaint.

V. *The Trial Court Erred in Limiting the Trial on HDN's Cross-Complaint*

Following dismissal of the FAC, the trial court issued an order limiting trial on HDN's breach of contract claim in its cross-complaint to the question of damages owed to HDN. The court based its ruling on an assumption that the order of possession issued in favor of HDN by a *different* judge in HDN's prior unlawful detainer action included a finding of Veta's liability to HDN for breach of contract. That assumption was mistaken.

As a general proposition, judgments in unlawful detainer actions have only "very limited res judicata effect." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255.) This is because "the proceeding is summary in character," "ordinarily, only claims bearing directly upon the right of immediate possession are cognizable," and "cross-complaints

12

and affirmative defenses, legal or equitable, are permissible only insofar as they would, if successful, 'preclude removal of the tenant from the premises.' [Citation.]" (*Ibid.*) Consequently, a judgment in a unlawful detainer action "will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations], or to adjudicate other legal and equitable claims between the parties [citations]." (*Ibid.*)

Moreover, the record of the hearing in the unlawful detainer action makes it clear the order of possession did not resolve any liability issues under the Lease. In fact, the unlawful detainer court did not even take any evidence on the issue of HDN's right to possession. Instead, Veta stipulated to issuance of the order of possession in HDN's favor, based on the express assurance that issues as to liability under the Lease would be resolved in the present action. Thus, in asking Veta whether it would be willing to agree to issuance of an order of possession, the court stated, "It's one thing to give [HDN] possession; it's another thing to order [Veta] to pay [HDN] rent if [Veta] truly w[as] prejudiced by [HDN's] unwillingness to go ahead and fix the place up. [¶] If that would meet [Veta's] needs, can we enter into an agreement on this, or do we need evidence?" Subsequently, one of the Veta partners asked the court, "In layman's terms, are you offering the idea that we give up our restaurant space that we've never even had access to?" The court answered in the affirmative, and the Veta partner continued, "So we essentially gave them nearly $15,000 and got nothing out of it. They turned around and pretty much locked us out of our space." The court responded, "If you're correct in that position, they may owe you the money again. But the fact is the space lies vacant while these legal actions proceed. They have a right to go forward on an unlawful detainer." Ultimately, Veta agreed to issuance of the order of possession and the court stated, "I will issue an order of possession. [¶] . . . [¶] The action will be consolidated for all purposes with the other case, and the remaining issue is rent, in this case, which I will hear at the time I hear the other case."

Thus, as a matter of law and based on the particular unlawful detainer proceedings in the present case, the trial court below erred in limiting the trial on HDN's breach of contract claim to determination of the amount of damages owed to HDN.

13

## DISPOSITION

The trial court's judgment is reversed. The trial court is directed to grant Veta leave to file a second amended complaint consistent with this decision. Veta is awarded its costs on appeal.

_____
SIMONS, Acting P.J.

We concur.

_____
NEEDHAM, J.

_____
BRUINIERS, J.

14