Filed 7/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DENISE TUKES,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>PIERRE RICHARD et al.,<br><br>     Defendants and Appellants. | B307242<br><br>(Los Angeles County<br> Super. Ct. No. BP115475) |
| PIERRE RICHARD,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>JAMES A. FRIEDEN et al.<br><br>     Defendants and Respondents. | B308337; B312086<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV44270) |

          APPEALS from orders and judgment of the Superior Court
of Los Angeles County, Monica Bachner and Clifford
Klein, Judges.  Affirmed.  Order subject to appeal by Denise
Tukes reversed and remanded with instructions.  Order subject
to cross-appeal by Pierre Richard and Robert A. Brown affirmed.

Law Offices of Robert A. Brown and Robert A. Brown, for Appellants Pierre Richard and Robert A. Brown.

Law Offices of James A. Frieden, James A. Frieden and Benjamin Bastomski, for Appellant Denise Tukes.

Nemecek & Cole, Michael McCarthy, Mark Schaeffer, and Kenny C. Brooks, for Respondent James A. Frieden.

_____

## INTRODUCTION

This opinion resolves three appeals.  Two are brought by Pierre Richard, who was the plaintiff in the proceedings styled *Pierre Richard v. James A. Frieden and Denise Tukes* (Super. Ct. L.A. County, 2020, No. 19STCV44270) (the 270 Action).  We refer to these appeals as the 270 Appeals.  The third appeal is brought by Denise Tukes, who was a petitioner in the proceedings styled *In re Adeline R. Bennett, M.D. Trust DTD 3/30/2001* (Super. Ct. L.A. County, 2020, No. BP115475) (the 475 Action).  We refer to this appeal as the 475 Appeal.  The 475 Appeal also encompasses a cross-appeal by Richard and his counsel, Robert Brown.

In the 270 Action, the trial court sustained special motions to strike Richard's complaint against Tukes and her counsel, James Frieden, pursuant to Code of Civil Procedure section 425.16, subdivision (b)(1)[1] (i.e., anti-SLAPP motions).  The trial court further awarded Tukes and Frieden attorney fees and costs pursuant to section 425.16, subdivision (c)(1).

_____

[1]     Undesignated statutory references are to the Code of Civil Procedure.

The first 270 Appeal (No. B308337) is of the trial court's judgment following its order on the anti-SLAPP motions. We agree with the trial court that Richard failed to demonstrate a probability of prevailing on the merits in the 270 Action because, under the circumstances presented, he lacked standing to bring a malicious prosecution claim with respect to an action that had not been prosecuted against him. The trial court's judgment is therefore affirmed.

The second 270 Appeal (No. B312086) is of the trial court's order awarding Tukes and Frieden attorney fees and costs in prosecuting their anti-SLAPP motions. As we find no legal error or abuse of discretion, the trial court's order is affirmed.

Finally, the 475 Appeal (No. B307242) is of an order entered by the probate court dismissing Tukes's creditor's petition for a finder's fee in the 475 Action. This order was rendered primarily on a misapplication of the doctrine of issue preclusion. We reverse this order and remand to the probate court for further proceedings. By their cross-appeal, Richard and Brown appeal an order directing Brown to pay expenses for repeated violations of the probate court's page limit rules. We find that the probate court acted within its authority in directing such payment and therefore affirm.

## BACKGROUND

Pierre Richard is one of two beneficiaries of the Adeline R. Bennett, M.D. Trust DTD 3/30/2001 (the Bennet Trust). The other beneficiary is Louise Clare, who is the mother of Denise Tukes.

The Bennet Trust co-owned with the Pitts Grandchildren's Trust (the Pitts Trust) vacant real property in Santa Fe Springs, California (the Property). Owing to pollution from prior use, the

3

Property had been designated a federal "Superfund" site. In 2006, the trustee of the Bennett Trust[2] and the trustee of the Pitts Trust[3] (the Bennett Trustee and the Pitts Trustee, respectively, and the Trustees, collectively) entered into a settlement agreement whereby they agreed they would sell the Property. But the Trustees apparently made no progress toward effectuating a sale for over a decade.

Frustrated by their lack of progress, Tukes, then a college student, took it upon herself to find a buyer. With the knowledge and support of the Bennett Trustee, she identified potentially interested parties, contacted them with information about the Property, and ultimately introduced the Trustees to a ready and willing buyer, CenterPoint Properties (CenterPoint). Tukes did so despite not being a licensed real estate broker. CenterPoint ultimately paid $13 million for the Property in or after December 2018. As there was no broker, the Trustees paid no brokers' commission in connection with the sale.

Once the terms of the sale had been agreed by the Trustees and CenterPoint, but prior to its closing, Tukes made demands on the Trustees for a finder's fee. Tukes's demand went unsatisfied. The proceedings below ensued.

---

[2]     During the period relevant to this appeal, Shoushan Movsesian succeeded Stan Mandell as the trustee of the Bennett Trust. The identities of the trustees have no bearing on this appeal and we do not distinguish between the individuals serving in this position.

[3]     At all times relevant to this appeal, Marvin C. Pitts was the trustee of the Pitts Trust.

4

## I.    Background Specific to the 270 Appeals

In late 2018, Tukes, through Frieden as her counsel, filed a complaint against the Trustees for compensation on account of her efforts in helping to sell the Property. This commenced an action styled *Denise Tukes v. Marvin C. Pitts, Jr. and Stan R. Mandell* (Super. Ct. L.A. County, 2020, No. 18STCCV09049) (the Tukes Action).

Though he was not named a defendant in the Tukes Action, Richard filed a two-page answer generally denying the allegations of Tukes's first amended complaint on March 12, 2019. He did so without leave to intervene. As a result, Richard was never named a party in the Tukes Action and was specifically identified on the court's docket as a "non-party" to the proceedings.

On April 15, 2019, Tukes filed requests for dismissal with respect to (i) claims against the Bennett Trustee; and (ii) "any claims against [Richard]." The court granted both requests. The Pitts Trustee was thereafter the sole defendant in the Tukes Action.

The Pitts Trustee subsequently removed the Tukes Action to federal court and settled with Tukes in August of 2019. In September 2019, pursuant to the settlement agreement, Tukes dismissed the Tukes Action with prejudice by filing a bare notice of dismissal in the federal district court pursuant to rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

Based on the Tukes Action, and despite never having been sued *by* Tukes, Richard sued Tukes and Frieden for malicious prosecution in December of 2019, thereby commencing the 270 Action. In response, Tukes and Frieden filed separate special motions to strike Richard's complaint pursuant to section 425.16,

5

subdivision (b)(1).  Tukes and Frieden argued, among other things, that Richard lacked standing to bring a malicious prosecution action with respect to a lawsuit to which he was not a party.  Richard opposed the motion on various grounds but failed to address Respondents' standing arguments.

The trial court concluded that Richard had failed to show a probability of prevailing in the 270 Action because he failed to show he had been a party to the Tukes Action and thus lacked standing to sue on account of its prosecution.  On the basis of this order, both Frieden and Tukes requested attorney fees pursuant to section 425.16, subdivision (c)(1).  The trial court granted their requests in the amounts of $49,071.50 and $26,905, respectively.

Richard appeals these awards and the resulting judgment. (§§ 425.16, subd. (i), 904.1, subds. (a)(1), (a)(2).)[4]

## II.    Background Specific to the 475 Appeal

After settling the Tukes Action with the Pitts Trustee, Tukes filed a creditor's petition pursuant to section 17000 of the Probate Code against the Bennett Trustee in the 475 Action (which action was already pending in connection with the administration of the Bennett Trust).  By her petition, Tukes sought a $350,000 finder's fee on account of her efforts in effectuating the sale of the Property under theories of breach of implied contract and quantum meruit.

---

[4]    Richard fails to include a statement of appealability in either of his opening appellate briefs.  We exercise our discretion under California Rules of Court, rule 8.204(e)(2)(B) to disregard Richard's non-compliance in this instance.

Richard, in his capacity as a beneficiary of the Bennett Trust (and thus an interested party pursuant to Probate Code section 48), responded to Tukes's petition with a motion for judgment on the pleadings. The probate court granted Richard's motion but gave Tukes leave to amend. Tukes amended, adding a count for breach of an oral contract, and Richard again moved for a judgment on the pleadings. The trial court granted this second motion without leave to amend on the bases that (a) Tukes's dismissal of the 270 Action with prejudice barred all three counts of the 475 Action under the doctrine of issue preclusion; and (b) Tukes's count for quantum meruit was invalid as pled. Tukes appeals the resulting dismissal of her claim. (Prob. Code, § 1300, subd. (d).)

Finally, in the course of the 475 Action, Tukes filed a motion for sanctions against Robert A. Brown, counsel for Richard, based on Brown's repeated failures to comply with court rules. The probate court denied the motion for sanctions but ordered Brown to pay Frieden expenses in the amount of $4,000. Richard and Brown cross-appeal from this order in the 475 Appeal. (§ 904.1, subd. (b).)

## DISCUSSION

### I. We Affirm the Trial Court's Judgment and Orders Challenged in the 270 Appeals

#### A. Applicable Standards of Review

We review the trial court's disposition of an anti-SLAPP motion de novo. (*Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1043.) We also review de novo any legal issues properly raised on appeal of a fee award. (*Reck v. FCA US LLC* (2021) 64 Cal.App.5th 682, 690 (*Reck*); *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016–1017.)

7

However, where satisfied that a party is entitled to fees and costs pursuant to section 425.16, subdivision (c)(1), we review the amount of the award for abuse of discretion. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322.)

**B. Analysis**

**1. The Trial Court Properly Granted Respondents' Anti-SLAPP Motion**

The trial court struck Richard's complaint against Tukes and Frieden pursuant to section 425.16 because Richard failed to show a probability of success in the 270 Action. First, the trial court concluded that the act of commencing the Tukes Action— the conduct complained of in the 270 Action—was an activity protected by section 425.16. (See *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) As a result, the trial court imposed on Richard the burden to demonstrate a probability of prevailing on his malicious prosecution claim. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Next, the trial court concluded that Richard failed to satisfy that burden. It explained: "[Richard] did not submit evidence suggesting he was a *party* to the [Tukes Action] such that he can establish the threshold requirement that the action in connection with which malicious prosecution is sought was asserted *against him*." (Italics in original.) The trial court characterized this as precluding standing to bring the 270 Action, noting Richard's failure to "[a]ddress the issue of his lack of standing to bring a malicious prosecution action." (See *Pillsbury v. Karmgard* (1994) 22 Cal.App.4th 743, 756 [absent showing of impropriety by trustee in failing to initiate malicious prosecution action itself, trust beneficiary lacked standing to sue third party that had previously sued only trustee].)

8

In his opening brief, Richard argues the trial court erred in concluding he was not a party to the Tukes Action. Without a separate heading or any application of the cited law to the facts presented, Richard also argues that there is a theoretical possibility of beneficiary standing in a case where a third party has sued the trustee for damages payable from the trust res. As the latter argument is forfeited,[5] we consider only the former and find it without merit.

Ordinarily, the initial parties to a lawsuit are those that have sued or been sued. (See, e.g., *Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1296 [an individual not named in an initial pleading is not a party to an action]; (*Apostolos v. Estrada* (1958) 163 Cal.App.2d 8, 12 [primary meaning of "party" is " 'an interested litigant or person whose name is designated on the record as plaintiff or defendant or in some other equivalent capacity' "].) However, one who is not an initial party may become a party by intervening. (§ 387, subd. (b).)

---

[5] A contention not appropriately raised in the opening brief under a separate argument heading may be deemed forfeited. (*Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1038, fn. 6.) In any event, the contention that Richard may have been able to show standing in the Tukes Action is irrelevant. The trial court found that Richard lacked standing to prosecute the *270 Action* because he was not a *party* to the Tukes Action. Even if he could now establish that he may have had standing *to become* a party to the Tukes Action, it would not change the fact that he did not, in fact, become a party to the Tukes Action, for the reasons herein discussed.

9

Code of Civil Procedure section 387 governs intervention. It provides that the nonparty seeking intervention "shall petition the court for leave to intervene by noticed motion or ex parte application." (§ 387, subd. (c).) The court is obligated to act on a request for intervention only upon the filing of a "timely application." (§ 387, subd. (d)(1).) Thus, intervention is ordinarily allowed only where the nonparty has filed a petition to intervene. (Cf. *Bowles v. Superior Court* (1955) 44 Cal.2d 574, 589 [intervention should be permitted only where the petitioner has satisfied the requirements of § 387].)

Here, it is undisputed that Richard failed to comply with the requirements of section 387. Nevertheless, he claims party status by virtue of his uninvited answer to Tukes's complaint.[6] Although courts have occasionally excused failure to comply with section 387's requirements, the cases appear to be limited to circumstances where the court actually determined that intervention was appropriate or the parties accepted the unapproved intervention without protest. (See, e.g., *Traweek v. Draper* (1956) 143 Cal.App.2d 119, 122 [failure to comply excused

---

[6] At oral argument, Richard argued that section 387 does not apply to answers; it applies only to complaints in intervention. This is incorrect. Section 387, subdivision (b), provides: "An intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons by [among other things,] . . . [u]niting with a defendant in resisting the claims of a plaintiff." Such an intervention is accomplished by an "answer in intervention." (§ 387, subd. (e)(1).) It is a condition of the right to file an answer in intervention that the person seeking intervenor status first file a petition with the court. (§ 387, subd. (c).)

10

where parties had treated complaint of non-party with obvious right of intervention as valid]; *Crofton v. Young* (1941) 48 Cal.App.2d 452, 456 [order granting intervention based on necessary findings was appropriate notwithstanding intervenor's failure to comply with statute].)

No such facts are present here. The trial court never authorized Richard to intervene and, notwithstanding his purported answer, identified him on the docket as a "non-party." Shortly after Richard filed his unauthorized answer, Tukes simply dismissed "[a]ny claims against Pierre Richard in the First Amended Complaint." In doing so, she did not concede that she had asserted any claims against Richard. She did not add him to the caption. She did not identify him as being a Doe defendant. She did not agree that he was ever a party. He was never a party.

Richard offers no authority that a person who volunteers an answer to claims filed against another, without more, becomes a party. All of the cases he relies upon to establish his purported party status involve belated challenges to a court's jurisdiction where the putative defendant had appeared and been treated by the plaintiff and/or the court as an actual defendant for all purposes.

In *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, the plaintiff served a complaint on two entities that it had intended to add by Doe amendment but failed to do so properly (at the time of service, an amended operative complaint had dropped the original complaint's Doe allegations, effecting a dismissal as to all Does). (*Id.* at p. 1139.) As a result, service on the entities was defective. The entities did not recognize the defect at the time and answered, filed cross-

11

complaints, and moved for summary judgment.  (*Ibid*.)  Later, however, they parlayed the service error into a judgment on the pleadings on statute of limitations grounds.  (*Ibid*.)  The appellate court reversed, holding that the entities had waived objections to service by making a general appearance.  *Fireman's Fund* thus treated as parties those defendants that the plaintiff had *intended* to sue and who had waived objection to being treated as having been sued, notwithstanding a technical failure on the part of the plaintiff.

In *Tyrrell v. Baldwin* (1885) 67 Cal. 1, individuals who were never named nor sued in an action filed an answer to the complaint and were treated by the plaintiff as named defendants. (*Id*. at p. 3.)  The individuals sought a judgment against the plaintiff and only after judgment was rendered against them did their successor in interest complain that they were not formal parties.  (*Id*. at p. 4.)  The appellate court rejected the challenge, explaining the individuals' intervention had been successful because they had been "permitted to do without opposition, and by tacit consent, what they might have done by leave of the court."  (*Ibid*.)  Thus, *Tyrrell* treated as parties those defendants that acted as though they had been sued *and* the plaintiff and the court had both treated them as having been sued.

In *Farmers & Merchants National Bank v. Peterson* (1936) 5 Cal.2d 601, the plaintiff sued multiple assignees of an insolvent corporation's assets, referred to in the opinion as "trustees." A trustee that had not been named in the suit nevertheless answered the complaint and the matter proceeded to trial. Following trial, the trial court entered a judgment against the unnamed trustee.  (*Id*. at p. 606.)  In the ensuing appeal, the unnamed trustee challenged judgment against him on the

grounds that he had never been a named party. The appellate court rejected his challenge, holding that he had waived objection to the judgment through his voluntary appearance. Like the defendants in *Fireman's Fund* and *Tyrrell*, the unnamed trustee was treated as a defendant by the plaintiff (in litigating the matter to judgment) and the court (in rendering judgment). Having silently acquiesced to this treatment until after suffering the adverse judgment, he was properly bound by the judgment.

None of these cases presents circumstances similar to those presented in the Tukes Action, wherein neither the trial court nor Tukes treated Richard as a party. For Richard to obtain party status based solely on the fact of his uninvited answer would eliminate the requirements of section 387, opening pending court proceedings to anyone that pleased to file a pleading. This is not the law.

As we reject the only point of error that Richard properly submitted to us, we affirm the trial court's grant of Frieden's and Tukes's anti-SLAPP motions.

**2. There Is No Error in the Trial Court's Section 425.16, subdivision (c)(1) Fee Award**

Richard attacks the trial court's section 425.16 fee awards to Frieden and Tukes on several grounds, none of which has merit.[7]

---

[7]     Richard's opening brief in his fee award appeal also contains extensive argument about the trial court's substantive decision on the anti-SLAPP motions. Richard separately appealed the substantive decision. We have already resolved that appeal and will not revisit the substantive issues Richard improperly re-argues in the fee award briefing.

13

First, he claims that the trial court awarded fees to Frieden based on work Frieden's counsel, Nemecek & Cole APC, did unrelated to Frieden's anti-SLAPP motion. The anti-SLAPP fee award statute applies only to those fees incurred in connection with the anti-SLAPP motion (including a related motion for fees and costs), not those incurred in other aspects of the action. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 21.)

In his opening brief, Richard offers a purported quote from counsel's declaration in support of the fee request as follows: "Mr. Brooks [of Nemecek & Cole] stated that he '***billed 72.7 hours on the matter prior to any work performed on the instant motion, and Mr. McCarthy billed 5.5 hours in defense of the matter.*' " (Bold italics in original.) Richard then argues the maximum compensable hours should therefore have been limited to just "29.2 hours [for] the anti-SLAPP motion and 2.9 hours on the fee motion . . . because Mr. Brooks admits that 72.7 hours were not on the anti-SLAPP motion." But Richard has mis-quoted counsel's declaration. What counsel actually said was that he had billed 72.7 hours before the "instant *fee* motion." (Italics added.) *All* work that counsel did relating to the successful anti-SLAPP motion necessarily preceded the fee motion. The referenced quote in no way indicates that the 72.7 hours were spent on matters unrelated to the anti-SLAPP motion.

Again quoting counsel for Frieden, Richard claims the fees awarded to Frieden were for his counsel's time spent "on 'the issues and developments in the [475] Action.'" This is highly misleading. What Frieden's fee motion said was: "Frieden's SLAPP motion, reply, and related efforts were labor intensive due, in part, to Richard's continued reference to, and reliance upon, the pending [475] Action. This required Frieden's counsel to litigate the instant action and research, and keep apprised of, issues and developments in the [475] Action." The pending 475 Action was plainly relevant to the anti-SLAPP motions. Indeed, the same theories in the Tukes Action that Richard called "totally and completely without merit" in his malicious prosecution complaint were being tested in the 475 Action. Thus, it was appropriate that Frieden's counsel monitor developments in the 475 Action in preparing the anti-SLAPP motion and be compensated for those efforts after the anti-SLAPP motion was successful.

Richard next argues it was error to award any fees because "the trial court never reached the issues upon which an anti-SLAPP motion is based." His reasoning is as follows: (a) the trial court decided the motion based on standing; (b) standing can be raised by demurrer; and (c) an anti-SLAPP motion premised on lack of standing should not be granted without leave to amend "if there is some uncertainty about standing."

The problem with this argument is that the statutory predicate for a fee award under the anti-SLAPP statute is that the defendant prevailed on its motion. There is no condition based on the reason the defendant prevailed. In relevant part, subdivision (c)(1) of section 425.16 provides: "a prevailing defendant on a special motion to strike shall be entitled to

15

recover [his or her] attorney's fees and costs." To the extent that the trial court relied on improper grounds for granting the motion, Richard should have raised them below and in his appeal of the judgment following the anti-SLAPP order. He did not and we have affirmed that judgment. Accordingly, Frieden and Tukes remain prevailing defendants entitled to costs and fees under section 425.16, subdivision (c)(1).

Richard next asserts that "an examination of [Tukes's counsel's time records] shows [counsel performed] virtually no work . . . except to read and review the anti-SLAPP motion research [*sic*] and drafted by Nemecek & Cole in Mr. Frieden's defense."[8] A trial court has discretion to award less than the fee amount requested where work performed was duplicative. (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 441 (*569 ECB*).) The trial court here did just that. It imposed reductions for work on the fee motion that was virtually identical to that filed by Nemecek & Cole. But it also noted material differences in the substantive motions reflecting independent work by Tukes's counsel in advocating her "unique . . . position and interests."

Richard fails to show that the trial court abused its discretion in making its limited time duplication adjustments. Richard fails to quantify the work that he considers duplicative for which no adjustment was made. And our review of the time entries Richard says show Tukes's counsel did "virtually no work"

---

[8] Richard makes the duplication argument in two different places in his brief, in the second instance calling Tukes's anti-SLAPP motion "virtually a photocopy of the anti-SLAPP motion researched and filed by Nemecek & Cole."

16

of its own show nothing of the sort. Likewise, though they are substantially the same in many respects, we note material distinctions between Tukes's anti-SLAPP motion and Frieden's. Where Richard sees duplication, the trial court recognized appropriate coordination that resulted in Tukes's costs being *less* than they would have been had her arguments been drawn from whole cloth. In short, the court did not abuse its discretion in awarding fees to the two separate firms that represented two separate defendants with separate interests relative to Richard.

Finally, Richard claims that the trial court's fee awards were excessive. He bases this argument merely on the fact that Nemecek & Cole offered some evidence of rates that were not specifically tailored to rates in California state court litigation. He then asserts that a rate of $275 was affirmed for anti-SLAPP work in *569 ECB*, *supra*, 6 Cal.App.5th at page 437; ergo the same rate should apply here. In doing so, he misapprehends the implications of abuse of discretion review.

Just as the *569 ECB* court found no basis on which to disturb the trial court's discretion, we find none here. "[C]ourts repeatedly have stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom." (*569 ECB*, *supra*, 6 Cal.App.5th at p. 437.) Here, the declarant for Nemecek & Cole testified to reasonable local rates based on his experience as a lawyer in Southern California. To corroborate his claim, he offered a fee schedule known as the "*Laffey* Matrix,"[9] from which he extrapolated rates subject to a

_____

[9] "The *Laffey* Matrix is a United States Department of Justice billing matrix that provides billing rates for attorneys at various experience levels in the Washington, D.C., area and can

17

local salary adjustment factor. The trial court considered this evidence and accepted the proposed rates for Nemecek & Cole "based upon the Court's own knowledge and familiarity with the legal market . . . ."

We agree with Richard that, without explicitly saying so, the trial court necessarily credited *Laffey* Matrix and related evidence. The rates that the trial court accepted were the same as those Nemecek & Cole's declarant offered based on an adjusted *Laffey* Matrix calculation. While some courts have questioned the utility of the *Laffey* Matrix outside of the Washington, D.C., area,[10] others have embraced it as applicable nationally where, as here, an appropriate local adjustment factor is applied. (See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702 (*Syers*) [finding no abuse of discretion in employing *Laffey* matrix in San Francisco litigation].)

*Syers* is particularly informative. In that case, the evidence establishing the reasonable billing rate was of the same nature as that offered here—testimony from counsel based on professional experience that aligned with a region-adjusted *Laffey* Matrix calculation. (*Syers*, *supra*, 226 Cal.App.4th at p. 702.) In affirming, the *Syers* court noted "that the trial court was neither

---

be adjusted to establish comparable billing rates in other areas using data from the United States Bureau of Labor Statistics." (*Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1057 fn. 5.)

[10] (See, e.g., *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 454 [finding no abuse of discretion in declining to employ *Laffey* Matrix outside of Washington, D.C., area].)

18

*required*, to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the 'market rate' for services of [the relevant] type." (*Ibid.*) While other approaches may have been appropriate, it continued, the approach employed was within the court's broad discretion in setting a reasonable fee award. (*Ibid.*)

We reach the same conclusion here. The trial court had broad discretion in determining a reasonable fee. In exercising that discretion, it was allowed to accept Nemecek & Cole's evidence to establish the rates that it approved. The trial court's section 425.16, subdivision (c)(1), fee award is therefore affirmed.

## II. The Probate Court's Judgment on the Pleadings in the 475 Appeal

### A. Judgment on the Pleadings Standard and Standard of Review

" 'A motion for judgment on the pleadings is analogous to a general demurrer.' " (*So v. Shin* (2013) 212 Cal.App.4th 652, 662.) Like a demurrer, "[a] motion for judgment on the pleadings is properly granted when the 'complaint does not state facts sufficient to constitute a cause of action against that defendant.' [Citation.] The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. [Citation.] The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219–1220 (*Stevenson Real Estate*).)

19

"Because a motion for judgment on the pleadings is similar to a general demurrer, the standard of review is the same." (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.)  Thus, "[w]e independently review the trial court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action.  [Citation.]  In doing so, we accept as true the plaintiff's factual allegations and construe them liberally.  [Citation.]  If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale." (*Stevenson Real Estate*, *supra*, 138 Cal.App.4th at p. 1220.)  This is because we review the validity of the ruling on a motion for judgment on the pleadings and not the reasons given.  (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259 (*Dudley*).)

Our authority to consider alternative reasons for affirmance is particularly significant in this case because Richard's motion to the probate court contained nine separately headed theories he claimed independently supported dismissal of Tukes's claims.  The court granted the motion (i) as to all three of Tukes's counts based on one of those theories, i.e., "res judicata" (which the probate court interpreted as embracing both claim preclusion and issue preclusion and found issue preclusion dispositive and claim preclusion inapplicable); and (ii) as to the third count based on a separate theory, i.e., the incompatibility of contract and quantum meruit counts where the quantum meruit count fails to deny the existence of the contract alleged in support of the contract count (see *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1389 (*Klein*)).

20

On appeal, Tukes chose to address in her opening brief only the theories relied upon by the probate court as well as claim preclusion. Remarkably, Richard failed to address in his respondent's brief *either* of the grounds the probate court relied on for decision. Indeed, his brief does not so much as mention the words "issue preclusion" or cite *Klein*. Instead, he argued two other theories for affirmance. The first is entirely new: that the two Trustees are jointly obligated on Tukes's claims, rendering the Bennett Trustee immune to suit because Tukes dismissed indispensable party Pitts Trustee with prejudice in the Tukes Action. The second theory reprises one advanced but not accepted in the probate court: that all of Tukes's claims are barred by the statute of frauds. Tukes addressed these arguments comprehensively in her reply.

All of this begs the question, what grounds for affirmance may or must we consider? Given the lack of guidance specific to motions for judgments on the pleadings, we look to decisions rendered in the demurrer context.

*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 205, states the general rule that an appellate court *must* consider the grounds advanced and actually argued in the demurrer and *may* consider other legal grounds not there advanced so long as the parties have had a reasonable opportunity to address them. Thus, we have discretion to consider an argument raised for the first time on appeal (*Ortega v. Topa Ins. Co.* (2012) 206 Cal.App.4th 463, 472) but are under no obligation to do so (see, e.g., *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322, fn. 2).

But this does not fully answer the question because waiver and abandonment rules also apply. First, one challenging a judgment after demurrer or on a motion for judgment on the pleadings bears the burden to demonstrate reversible error. (*Berman v. HSBC Bank USA, N.A.* (2017) 11 Cal.App.5th 465, 471 (*Berman*).) Since showing merely that the trial court sustained a motion for judgment on the pleadings for the wrong *reason* is insufficient to show reversible error (*Stevenson Real Estate*, *supra*, 138 Cal.App.4th at p. 1220), an appellant must address in its opening brief each ground argued to the trial court in support of the motion. (Cf. *Weaver v. Shell Oil Co.* (1933) 129 Cal.App. 232, 234 ["[T]he burden is upon appellants to show error in the ruling. In other words, it is incumbent upon appellants to overcome the presumption in favor of the order and this cannot be done by merely giving consideration to some of the grounds upon which the motion was based"].) Failure to meet that burden in an opening brief may result in waiver or forfeiture. (*Berman*, *supra*, 11 Cal.App.5th at p. 471; cf. *Hastaran v. Marchand* (1913) 23 Cal.App. 126, 134 ["[E]very point relied upon for reversal should be stated and argued in the opening brief of counsel for the appellant; and therefore points not so stated and argued may be deemed to be waived"].) However, "the rule that legal arguments made in the trial court but not addressed in an opening brief are forfeited is a discretionary one, and we may consider the merits of the arguments." (*Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 321.)

Second, a respondent who has advanced multiple theories in support of a demurrer or judgment on the pleadings may be deemed to have abandoned those theories by failing to reassert them on appeal. (*Platner v. Vincent* (1921) 187 Cal. 443, 447

22

(*Planter*) ["Respondent in her brief does not mention the point of defect of parties raised by the demurrer, hence it will be regarded as abandoned . . . ."].) Put another way, if the proponent of a theory does not consider it worthy of recitation to the appellate court, the appellate court is entitled to presume the theory has no merit.

As applied here, these rules give us significant latitude in deciding what issues to consider. At one end of the spectrum, we could deem Tukes to have waived all alternative grounds by failing to address them in her opening brief. At the other end, we could consider only Richard's statute of frauds ground—the only ground that he argued both to the probate court and reasserted on appeal. Under the circumstances, we believe the appropriate course is to interpret the limitations in the parties' appellate briefs as a deliberate effort to focus only on those issues meriting our consideration. We will thus consider only those grounds relied upon by the parties in their respective appellate briefs.

**B.  Analysis**

**1.  The Trial Court Erred in Finding Tukes's Claims Are Barred by Issue Preclusion**

"[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825 (*DKN*).) These elements are conjunctive, meaning that if just one is unsatisfied, issue preclusion cannot apply. Moreover, even where each element is satisfied, "a court must consider whether application of the issue preclusion doctrine would comport with the doctrine's core policies, namely the preservation of the integrity of the judicial

23

system, the promotion of judicial economy, and the protection of litigants from harassment by vexatious litigation." (*Contreras-Velazquez v. Family Health Centers of San Diego, Inc.* (2021) 62 Cal.App.5th 88, 100.)

The probate court found that Richard properly asserted issue preclusion to each of Tukes's claims against the Bennett Trustee because Tukes had dismissed with prejudice similar claims, raising similar issues, against the Pitts Trustee in the Tukes Action. We agree with Tukes that the probate court misapplied the doctrine of issue preclusion. Specifically, the probate court erred in concluding that dismissal with prejudice satisfies the "actual litigation" requirement for claim preclusion articulated in *DKN*.

In his dissenting opinion in *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788 (*Boeken*), Justice Moreno observed as follows: "Although there is some controversy in the matter, the dominant rule in this state is that an issue that has been settled by a voluntary dismissal with prejudice does not constitute an issue that has been 'actually litigated' for collateral estoppel purposes." (*Id.* at p. 810.) In the 12 years since *Boeken*, the Supreme Court has yet to resolve this controversy.[11] The probate

---

[11] In *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91, the Supreme Court affirmed that "[a] dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation *between the parties* on the dismissed claim." (Italics added.) *Kim* carefully cabined its discussion to the doctrine of claim preclusion and made no mention of issue preclusion. Thus, it has no application here.

We note that Richard cites *Kim* in his respondent's brief for the above-quoted proposition. But he makes no mention of claim

24

court below adopted what Justice Moreno identified as the disfavored rule: that dismissal with prejudice *does* amount to "actual litigation" for issue preclusion purposes. We disagree with the probate court and adopt the dominant rule.

In adopting the contrary rule, the probate court relied on *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813 (*Torrey Pines*) and its progeny.[12] According to the probate court, *DKN*'s issue preclusion requirement of "actual litigation and determination" is a "term of art" that *Torrey Pines* shows can be satisfied by mere dismissal with prejudice. However, nowhere does the *Torrey Pines* majority opinion acknowledge issue preclusion's requirement of "actual litigation" that *DKN* makes explicit.[13] (See *DKN*, *supra*, 61 Cal.4th at p. 825.) Rather, the *Torrey Pines* majority considered the requirements of issue preclusion to be limited to the following: " '(1) the issue in the second action must be identical to the issue adjudicated in the

---

preclusion, much less any argument that it applies. The probate court expressly found claim preclusion inapplicable. Tukes argued in her opening brief that claim preclusion is inapplicable. By failing to address claim preclusion Richard abandoned any contention that it applied. (*Platner*, *supra*, 187 Cal. at p. 447.)

[12] In addition to *Torrey Pines*, the probate court relied on *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527, and *Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533, each of which relies on *Torrey Pines*.

[13] Indeed, the majority's failure to impose the actual litigation requirement was a centerpiece of the *Torrey Pines* dissenting opinion. (*Torrey Pines*, *supra*, 216 Cal.App.3d at p. 825.)

first action; (2) the first action must have proceeded to a final judgment on the merits; and (3) the party against whom the collateral estoppel is to be asserted must have been a party, or in privity with a party, to the first action.' " (*Torrey Pines,* at p. 824.) Since *Torrey Pines* does not hold that dismissal with prejudice constitutes "actual litigation," the probate court erred in relying on *Torrey Pines* for that proposition.

We acknowledge that collateral estoppel may apply where the parties have resolved issues in a manner that falls short of a full-blown trial. (See, e.g., *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 (*CSAA*) ["a stipulated judgment may properly be given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms"]; but see *Rice v. Crow* (2000) 81 Cal.App.4th 725, 736, 736–737, fn. 1 ["A settlement which avoids trial generally does not constitute actually litigating any issues and thus prevents application of collateral estoppel"; distinguishing *CSAA*].) But we agree with our Second District colleagues in *Rice v. Crow, supra*, 81 Cal.App.4th at pages 736–737 and *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1174, that the bare pre-trial dismissal of a lawsuit with prejudice does not result in the "actual litigation" of any issues for issue preclusion purposes.

To hold otherwise would render issue preclusion's "actual litigation" requirement meaningless. Where a pre-trial settlement results in a bare dismissal with prejudice without any findings or determinations entered by the court, all that has occurred for preclusion purposes is that the parties have agreed to permanently terminate the action at hand *without* litigation. Such a dismissal amounts to "a final judgment on the merits" for

26

*claim* preclusion purposes because "with prejudice" means that any future action between the parties on the same subject matter is barred. (*Boeken*, *supra*, 48 Cal.4th at p. 793.) But while any "final judgment on the merits" can support claim preclusion, it is not enough to support issue preclusion.

*DKN*, in response to widespread confusion about the doctrines, made this abundantly clear in articulating the distinct requirements of claim and issue preclusion. (*DKN*, *supra*, 61 Cal.4th at pp. 824–825.) Instead of "a final judgment on the merits," issue preclusion requires "final adjudication" and "actual litigation." (*Id.* at p. 825.) And, since *DKN*, the Supreme Court has reiterated that the two doctrines' elements are distinct: "[c]laim and issue preclusion have different requirements and effects." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) Treating the "final adjudication" and "actual litigation" requirements as satisfied by any "final judgment on the merits," including a bare dismissal with prejudice, would eliminate a fundamental distinction between claim and issue preclusion in derogation of *Samara* and mark a return to the confusion that *DKN* sought to end.

The notice of dismissal with prejudice filed in the Tukes Action served only to terminate the lawsuit between the parties— Tukes and the Pitts Trustee—without actual litigation of any issues. We thus conclude that Richard cannot rely on such dismissal to support the defense of issue preclusion in the 475 Action.

**2. The Bennett Trustee May Be Sued Because the Pitts Trustee Is Not an Indispensable Party**

In his respondent's brief, Richard contends that dismissal of the Pitts Trustee with prejudice in the Tukes Action bars

27

Tukes's claims against the Bennett Trustee, not because of claim preclusion or issue preclusion, but because the Pitts Trustee is the Bennett Trustee's joint obligor. Though Richard does not say it directly, we infer from his assertion that he views the Pitts Trustee as an indispensable party without whom the Bennett Trustee cannot be sued. We disagree.

Attempting to establish that the Trustees are joint obligors, Richard directs us (without record citations) to Tukes's allegations in the Tukes Action. The referenced allegations are that an implied contract existed between Tukes and both of the Trustees, or that they were both liable to Tukes in quantum meruit to prevent their unjust enrichment. Tukes does not dispute that the now-dismissed allegations in the Tukes Action were that the Trustees were both liable to her for the finder's fee under the two alleged theories. Nor does she dispute that the prior allegations are properly considered in assessing the Bennett Trustee's amenability to suit in the 475 Action. We therefore do consider the allegations.

Tukes's sole response is that her allegations in the Tukes Action create a presumption of joint and several liability by the Trustees and no contrary intention is shown. In support, Tukes relies on Civil Code section 1659, which provides that "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." We agree with Tukes that Civil Code section 1659 controls here.

Each count asserted in the Tukes Action is predicated on a promise implied either from the parties' conduct or other circumstances. (*Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 525 [" 'A cause of action for breach of implied contract has

28

the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct' "]; *Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1673 [" 'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered" ' "].)  Civil Code section 1659 applies equally to express promises and those implied by law.  (See *Kirtley v. Perham* (1917) 176 Cal. 333, 341 [applying section 1659 to joint vendors' implied promise to repay purchaser's installment payments under executory contract for sale following destruction of subject property].)

Tukes also alleges that the Trustees both received benefits from the promises she asked the probate court to imply. Specifically, she alleges that, in expectation of payment for her efforts, Tukes identified and introduced to the Trustees a potential buyer for the Property and, as a result, the Trustees consummated a sale of the Property without the usual cost of a real estate broker.

We therefore conclude that Civil Code section 1659's presumption of joint and several liability applies to the Trustees' alleged obligations to Tukes.  We are shown no intention on the part of any party that the obligation be joint only.  Thus, Tukes was free to sue the Bennett Trustee in the 475 Action without joining the Pitts Trustee.  (*DKN*, *supra*, 61 Cal.4th at p. 820 [parties who are jointly and severally liable may be sued in separate actions].)

29

### 3. The Statute of Frauds Does Not Bar Tukes's Claims Against the Pitts Trustee Because She Adequately Pled Estoppel

An agreement for a finder's fee ordinarily must be in writing to be enforceable. This is because such agreements are subject to the statute of frauds, Civil Code section 1624, subdivision (a)(4). (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 27 (*Tenzer*).) The statute of frauds applies to all forms of promises and agreements falling within its ambit, whether express or implied. (*Beard v. Melvin* (1943) 60 Cal.App.2d 421, 426 [" 'Whatever the form of the action may be, if the proof of a promise or contract within the statute is essential to maintain it, there can be no recovery unless the statute is satisfied' "]; see also *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 821, disapproved in part on other grounds in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. 5 [statute of frauds applies equally to actions "based on contract or implied contract"].) Thus, Tukes can recover her claimed finder's fee under her oral contract, implied contract, or quantum meruit theories only if she can ultimately prove that an exception to the statute of frauds exists.

Recognizing this, Tukes asserted in her petition that the Bennett Trustee "is estopped from asserting the statute of frauds due to the unconscionable injury [Tukes] will suffer or the unjust enrichment that the Trustee will retain if [she] is not paid a finder's fee." *Tenzer* indeed recognizes that "[t]he doctrine of estoppel to plead the statute of frauds may be applied where necessary to prevent either unconscionable injury or unjust enrichment" and may be invoked by an unlicensed finder. (*Tenzer*, *supra*, 39 Cal.3d at pp. 24, 27.) The question is thus

30

whether Tukes's allegations adequately plead the exception.

As to unconscionable injury, Tukes alleges that, beginning sometime in 2017, she spent more than 2,000 hours over the course of seventeen months searching for a buyer for the Property. The search was so time consuming that "she was forced to drop out of college and delay her education in order to sell the Property." At some point during the 17-month effort, Tukes alleges that the Bennett Trustee assured her "that if she successfully located a buyer, she would be compensated for her work." Although Tukes originally commenced her search out of pity for her mother "having to live without the substantial inheritance that Dr. Bennett wanted her mother to get," she allegedly *continued* her search in reliance on the Bennett Trustee's promise of compensation.

Tukes fails to state precisely when the promise occurred. We note that work she did out of pity for her mother cannot be considered for estoppel purposes here; only work performed in reliance on the Bennett Trustee's alleged promise can.[14] (Cf. *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 199 (*Smyth*) [changes in position undertaken prior to alleged promise irrelevant to estoppel analysis].) However, we ascertain from the petition's allegations that the promise was made not later than June 5, 2017, when the Bennett Trustee's assistant furnished a copy of the Property's title report to Tukes, because Tukes alleges that he furnished the report "[i]n furtherance of his agreement

---

[14] In her appellant's reply brief, Tukes argues that *all* of her efforts and sacrifice were induced by the Bennett Trustee's alleged promise. This is at odds with the allegations in the petition for the reasons stated.

31

with her," which agreement was premised on the alleged promise. Thus, depending on when in 2017 she started her search, Tukes's allegations are that she spent at least a full year, to the exclusion of continuing her education, to find a buyer for the Property in purported reliance on the Bennett Trustee's alleged promise.

These allegations are sufficient to create a question of fact on the issue of estoppel. In *Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1069, allegations that the plaintiff retired from her job, moved in with a man, and performed spousal duties for him for five years based on his oral promises to devise property to her created questions of fact regarding estoppel. Similarly, in *Carlson v. Richardson* (1968) 267 Cal.App.2d 204, 208, that plaintiffs had purchased land near a building site the defendant had orally promised to sell them created a question of fact regarding estoppel. In contrast, in *Smyth*, *supra*, 31 Cal.App.5th at page 198, the court found that the plaintiffs' time spent "working up [an] offer" to buy real property based on the defendant's oral extension of a lease containing a right of first refusal did not suffice to plead estoppel.

These cases reflect that allegations of substantial investment made by the plaintiff in reliance on the defendant's promise—whether in time, effort, or money—may permit the trier of fact to consider a claim of estoppel. In contrast, allegations of an insubstantial investment will not. We are satisfied that Tukes has alleged sufficient investment of time and effort in reliance on the Bennett Trustee's alleged promise to plead estoppel. We therefore need not consider whether the Bennett Trustee would be unjustly enriched if he were allowed to renounce his alleged promise.

### 4. Although the Probate Court Correctly Analyzed Tukes's Quantum Meruit Claim, Leave to Amend Is Now Warranted

In addition to its erroneous issue preclusion ground, the probate court granted Richard's motion on Tukes's quantum meruit count on the alternative ground that she could not maintain such count without disclaiming the existence of the contracts alleged in the first two counts of the petition. This was a correct application of the rule stated in *Klein*, *supra*, 202 Cal.App.4th at page 1389. Moreover, the probate court did not err in denying leave to amend where it had identified (albeit erroneously) an independently sufficient ground to grant Richard's motion as to the quantum meruit count. However, since we conclude that Richard's motion should not have been granted on any other ground, we must consider Tukes's request for leave to amend her quantum meruit claim.

We consider a request for leave to amend when reviewing judgment following a motion for judgment on the pleadings in the same way as when reviewing judgment following a demurrer. (*Dudley, supra,* 90 Cal.App.4th at p. 260.) To show entitlement to leave to amend, "the appellant must show there is a reasonable possibility that the defect in the complaint can be cured by amendment." (*SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 317.) In particular, it " 'must show in what manner [it] can amend [its] complaint and how that amendment will change the legal effect of [its] pleading.' [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

33

Tukes has done so here (and Richard does not argue otherwise).  She proposes to address the issue identified by the probate court by "pleading unequivocally that no enforceable contract governed the transaction" for purposes of her quantum meruit count.  Such alternative pleading is expressly permitted under *Klein, supra*, 202 Cal.App.4th at page 1388.  Thus, there is a reasonable probability that the proposed amendment will cure the defect.

## III.  We Affirm the Expense Award Against Brown in the 475 Appeal[15]

### A.  Applicable Standards of Review

Citing to *Reck, supra*, 64 Cal.App.5th 682, 690, Richard and Brown say the standard of review "in determining whether the criteria for an award of attorney fees has been satisfied" is de novo.  Citing *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1217, Tukes counters that we should review

---

[15]    In responding to Richard and Brown's cross-appeal, Tukes notes our authority to strike their opening brief for failure to include a statement of appealability as required by California Rules of Court, rule 8.204(a)(2)(B).  Rule 8.204(e), and not Tukes's cited *Lester v. Lennane* (2000) 84 Cal.App.4th 536, governs our authority in this regard.  We in no way condone Richard and Brown's failure in their cross-appeal (or Richard's corresponding failures in the 270 Appeals).  Nor do we adopt Richard and Brown's characterization of *Westchester Secondary Charter School v. Los Angeles Unified School Dist.* (2015) 237 Cal.App.4th 1226, 1235, footnote 4, as categorically excusing compliance with rule 8.204(a)(2)(B) under any circumstance.  Nevertheless, as we did with respect to Richard's appeals, we exercise our discretion under rule 8.204(e)(2)(B) to disregard Richard and Brown's non-compliance here.

only for abuse of discretion. As explained in *Reck*, de novo review applies to legal questions pertaining to a fee award. (*Reck*, *supra*, 64 Cal.App.5th at pp. 690–691.) Here, Richard and Brown's opening brief evinces a legal challenge to the probate court's authority to order Brown to pay expenses under the circumstances presented. We review the question of authority to award fees de novo. (*Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452.)

### B. Analysis

California Rules of Court, rule 2.30 affords a trial court, including one administering probate proceedings, authority to award sanctions "for failure without good cause to comply with the applicable rules." (Cal. Rules of Court, rule 2.30(a), (b).) In addition, the court may order the person found in violation of an applicable rule to "pay to the party aggrieved by the violation that party's reasonable expenses, including reasonable attorney's fees and costs, incurred in connection with the motion for sanctions . . . ." (*Id.* at rule 2.30(d).)

In their opening brief on cross-appeal, Richard and Brown do not dispute that Brown violated a rule. Rather, they suggest that the probate court's rule 2.30 authority terminates where (a) the violator prevails in the litigation in which the litigation occurred; (b) the violations were compelled by rule violations of his opponent; and (c) the request for sanctions did not comply with a rule of court. We reject Richard and Brown's position.

First, there is no basis in rule 2.30 for the exception Richard and Brown suggest. Remarkably, they do not so much as mention rule 2.30 in their opening brief on cross-appeal. Second, they cite no cases that a probate court loses its sanction and expense award authority under rule 2.30 under any

35

circumstances.[16]  Third, they fail to argue how the circumstances could result in the termination of the probate court's authority. We are entitled to, and do here, disregard assertions that are unsupported by argument or authority.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

Without any support for their claim that the probate court's authority was limited by the circumstances, Richard and Brown's cross-appeal collapses into a complaint that the probate court *should* not have ordered Brown to pay expenses; not that it *could* not make such an order.  Considering such an argument would require us to review the probate court's discretion.  (See *Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688, 700 [noting that rule 2.30 affords trial courts discretion] (*Sino Century*).)  But Richard and Brown have not asked us to review the trial court's exercise of discretion.  Indeed, they insist that they have made no such request.  We therefore decline to do so.

---

[16]  Richard and Brown argue extensively that authorities Frieden cited to the probate court by way of analogy were inapposite.  Whether true or not, Richard and Brown bear the burden on their cross-appeal to show error.  (*Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398, 428, superseded by statute on other grounds as stated in *Pulliam v. HNL Automotive Inc.* (2021) 60 Cal.App.5th 396, 411.)  Where there is no indication that the probate court even relied on Tukes's cited authority, as opposed to the plain language of rule 2.30 (which Richard and Brown ignore), we fail to see the relevance of this argument to Richard and Brown's cross-appeal.

On reply, Richard and Brown attempt to recast their appeal as addressing the legal question of whether "Rule 2.30 '***authorizes***' a trial court to award attorney's fees as 'sanctions' "—an issue not addressed in his opening brief. (Bold italics in original.) To do so they rely on *Sino Century*, *supra*, which provides that "attorney fees may not be awarded as a sanction absent specific authorization or agreement of the parties." (*Sino Century*, *supra*, 211 Cal.App.4th at p. 697.) Ordinarily we disregard arguments not made in an opening brief absent good cause. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) Here, good cause is not shown. In any event, the argument that the probate court awarded fees as a sanction in contravention of *Sino Century* is without merit. The probate court expressly declined to order sanctions but awarded expenses in an amount ($4,000) that was less than half the amount ($8,085) Tukes claimed were incurred in preparing the motion for sanctions. Rule 2.30(d) authorizes fee awards in the amount "incurred in connection with the motion for sanctions." (Cal. Rules of Court, rule 2.30(d).) The sanctions motion was among the "additional work" Frieden undertook as a result of Brown's repeated rule violations.

For all of these reasons, we find no error in the probate court's expense award.

## DISPOSITION

The judgment and orders in the 270 Appeal are affirmed. Costs are awarded to Tukes and Frieden.

In the 475 Appeal, the order dismissing Tukes's claim with prejudice is reversed and the matter is remanded to the probate court with instructions to vacate the order granting the motion for judgment on the pleadings and enter a new order on such

37

motion denying such motion as to counts 1 and 2 and granting such motion as to count 3 with leave to amend.  The order directing Brown to pay Frieden $4,000 in expenses is affirmed. Costs are awarded to Tukes.

**CERTIFIED FOR PUBLICATION**


HARUTUNIAN, J.[*]

We concur:


STRATTON, P. J.


GRIMES, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.